DETERMINED IN THE

# FIRST DEPARTMENT

AT

# GENERAL TERM,

## 𝕱𝖊𝖇𝖗𝖚𝖆𝖗𝖞, 1895.

JAMES ROARTY, Respondent, *v.* EDWARD C. McDERMOTT and Others, Defendants.

FRANK J. WALGERING, Appellant.

*Power of sale in a will — a sale made by an executrix for her individual benefit is invalid — unmarketable title.*

The will of a testator provided as follows: "I hereby authorize and empower my executrix, hereinafter named, to mortgage or sell any portion of my said estate at public or private sale for the purpose of carrying out the provisions of this my will, or whenever, in her judgment, it may be for the best interest of my estate, applying the proceeds thereof to the benefit of my said estate."

The executrix, under the power contained in the will, conveyed a piece of real estate which had been owned by her testator to a person who subsequently reconveyed said property to the executrix as an individual and received, as part payment of the purchase money, a mortgage upon the premises so sold and also a mortgage executed by the executrix upon other property which had belonged to her testator.

The mortgagee subsequently brought an action to foreclose the two mortgages executed by the executrix, making as parties defendant the executrix, both as an individual and in her representative capacity, and all the four children of the testator, devisees under his will, three of whom were infants under the age of fourteen years. The infants appeared by their guardian *ad litem* and interposed the usual general answer. The guardian *ad litem* was the attorney of record for the executrix.

The complaint in the action to foreclose the mortgages alleged that the children of · the testator had, or claimed to have, some interest in or lien upon the said mortgaged premises, or some part thereof, which interest or lien, if any, had accrued subsequently to the lien of the said mortgage and was subordinate thereto.

A judgment foreclosing said mortgages was recovered, and pursuant to such judgment, a portion of the mortgaged premises was sold to the mortgagee.

FIRST DEPARTMENT, FEBRUARY TERM, 1895.            [Vol. 84.

In an action thereafter brought for the partition of a portion of the premises by grantees from the purchaser at the foreclosure sale, the property was bid off by one Walgering, who refused to complete his purchase on the ground of defect of title.

Upon an appeal from the order directing the appellant to complete his purchase, it was,

*Held,* that the power of the executrix to mortgage or sell the testator's real estate, under the provisions of his will, was given solely for the purpose of carrying out the provisions thereof, and that she had no power to sell or mortgage for any other purpose;

That the mortgages given by her upon the property of the estate, for her individual benefit, were invalid as to the interest in the property not devised to her;

That under the complaint in the foreclosure action the interest of the infant heirs at law of the testator was not cut off by the judgment;

That the title was so doubtful and uncertain that the purchaser should not be compelled to perform his contract.

APPEAL by Frank J. Walgering, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 28th day of November, 1894, directing him to complete his purchase of certain real property.

August 24, 1871, Thomas McConnell died seized in fee of No. 441 West Forty-fifth street (the premises in question), of 235 West Twenty-ninth street and of a farm at Smithtown, Suffolk county, N. Y. He left him surviving Ann McConnell, his widow, and four children, Thomas McConnell, Hugh McConnell, Ann McConnell and John McConnell, his only heirs and next of kin. He left a last will and testament of which the following is a copy:

"IN THE NAME OF GOD, AMEN:

"I, Thomas McConnell, of the city and county of New York, being of sound mind and memory, and considering the uncertainty of this life, do therefore, make, ordain, publish and declare this to be my last will and testament, that is to say:

"*First.* After all my lawful debts are paid and discharged, I give and bequeath to my beloved wife Ann all the real and personal estate of which I may die seized or possessed, to be used and enjoyed by her during her natural life, subject, however, to the conditions following.

"*Second.* I give and bequeath to my son Thomas an equal undivided one-fourth part of all my real and personal estate, after

deducting the one-third amount thereof to which my said wife would be entitled by way of dower, such fourth to be paid to him in cash on his arrival at the age of 21 years, such amount to be based upon the valuation of the appraisers hereinafter named.

" *Third.* I give and bequeath to my three children, Hugh, Ann and John, after the death of my wife, all the real and personal estate that may then be remaining, to be divided between them in such proportions as she may by will direct, it being my intention that all my real and personal estate shall be given to and become the property of my last-named three children or the survivors of them.

" *Fourth.* I hereby authorize and empower my executrix, hereinafter named, to mortgage or sell any portion of my said estate, at public or private sale, for the purpose of carrying out the provisions of this my will, or whenever in her judgment it may be for the best interest of my estate, applying the proceeds thereof to the benefit of my said estate.

" *Fifth.* I hereby nominate and appoint my friends, Bernard Clark, Michael Roche and Thomas A. Ledwith, to appraise my estate when my son Thomas shall arrive at the age of twenty-one years, the valuation so made by them to be the basis upon which the amount so as aforesaid to be paid to him is to be paid.

" Likewise, I make, constitute and appoint my beloved wife, Ann McConnell, to be executrix of this my last will and testament, hereby revoking all former wills by me made."

The will was duly admitted to probate September 13, 1871, and on the following day letters of administration were issued to Ann McConnell, who qualified and entered upon the discharge of her duties as executrix. June 13, 1872, said executrix conveyed, by a deed dated on that day and recorded June 17, 1872, No. 235 West Twenty-ninth street to Charles Devlin for $9,000, who paid all of the purchase price except $3,000, which he secured to be paid by his bond, secured by a mortgage on said premises, executed to Ann McConnell, as executrix. Part of the purchase price (more than $4,500) was applied by the executrix in payment of a mortgage on the farm, which was executed by Thomas McConnell in his lifetime in payment of taxes in arrear thereon, and some portion of the purchase price was applied by the executrix in payment of taxes in arrear on No. 235 West Twenty-ninth street. June 21, 1873, said

Charles Devlin, by a deed dated on that day, conveyed No. 235 West Twenty-ninth street to Ann McConnell, individually, in consideration of $9,000, which she paid by canceling said mortgage for $3,000 held by her as executrix, and by her bond to him, dated June 21, 1873, for $6,000, secured by a mortgage executed by Ann McConnell, individually, on No. 235 West Twenty-ninth street, dated June 21, 1873, and recorded November 29, 1873. Further to secure the payment of her said bond for $6,000 she, as executrix, executed a mortgage to Charles Devlin, dated June 21, 1873, and recorded September 10, 1873, for $6,000 on No. 441 West Forty-fifth street. In January, 1877, Charles Devlin brought an action against Ann McConnell, individually and as executrix, to foreclose said two mortgages, the four children of Thomas McConnell being parties defendant therein. Three of the children, Hugh, Ann and John, were infants under fourteen years of age and appeared by their guardian *ad litem* and interposed the usual general answer in behalf of infants. The guardian *ad litem* was the attorney of record for the defendant Ann McConnell. May 21, 1877, a judgment foreclosing said mortgages was recovered. Pursuant to the judgment the mortgaged premises, No. 441 West Forty-fifth street and No. 235 West Twenty-ninth street, were sold June 18, 1877, to Charles Devlin, the mortgagee, he being the highest bidder. October 16, 1877, he assigned his bid to Mary Devlin, his wife, to whom the referee executed a deed of said two lots, dated October 13, 1877.

Afterwards this action to partition No. 441 West Forty-fifth street was begun, and May 29, 1894, an interlocutory judgment was entered directing a sale of the lot, pursuant to which, on June 21, 1894, the referee sold it at public auction to Frank J. Walgering for $15,800, and he thereupon executed the usual memorandum of purchase and sale. Subsequently he refused to complete the purchase on the ground that the title was doubtful. Afterwards a motion was made, in behalf of the parties to the action, to compel him to perform his contract, which was granted, and from the order entered he appealed.

*Clemens J. Kracht*, for the appellant.

*William H. Hamilton*, for the respondent.

FOLLETT, J. :

How the parties to this partition action succeeded to the title of Mary Devlin does not appear, but it seems to be assumed that they succeeded to her title, and that the referee could convey the estate which Mary Devlin acquired by the deed executed to her October 13, 1877, by the referee in the foreclosure action.

By the will of Thomas McConnell his widow took the use of all the testator's property until his eldest son, Thomas, became of age, when he became entitled to one-fourth of the estate, subject to the dower interest of his mother in that fourth, and after that event she was entitled to a life estate in the remaining three-fourths, and the remainder, on her death, passed under the will to the testator's three youngest children, to be divided equally among them, or among the survivors of them. On the 7th of July, 1873, Thomas McConnell, having become twenty-one years of age, received his share of his father's estate, and quit-claimed all of his interest in No. 235 West Twenty-ninth street and No. 441 West Forty-fifth street by a deed dated and recorded on that date. The life estate of the widow in this lot has been cut off by her conveyance, and the question is whether the estate of the three minor children was cut off by the judgment in foreclosure. When these infants became of age does not appear, but it is shown that all of them were under fourteen years of age March 14, 1877. Assuming that the eldest was then thirteen, the second twelve, and the youngest eleven years of age, the youngest would become twenty-one years of age in 1887. Whether we are right in this assumption is not disclosed by the record, and the youngest may have reached majority at a much later date. By reference to the power of sale contained in the fourth clause of the will of Thomas McConnell, it will be seen that the power of the executrix to mortgage or sell is solely for the purpose of carrying out the provisions of the will, and she was given no power to sell or mortgage for any other purpose. By the record in the foreclosure action it appears that the mortgage which she executed to Charles Devlin June 21, 1873, on No. 441 West Forty-fifth street, was given as collateral security for the payment of her personal bond for $6,000, which she gave as part of the consideration of her personal purchase of No. 235 West Twenty-ninth street. The proposition that the will

gave her no power to mortgage this property for her individual benefit is so plain that it does not need the support of precedent. She could neither divest nor incumber the remainder devised to her children for her personal use. But it is urged that these infants, having been made parties to the action for the foreclosure of the mortgage, and having appeared therein by a guardian *ad litem*, their remainders were cut off by the judgment. This proposition is not sustained.

The complaint and the amended complaint in the foreclosure action contain the following averment:

"And the plaintiff further shows that he is informed and believes that Thomas McConnell, Hugh McConnell, Ann McConnell and John McConnell, Luke Molloy, Rensselaer B. Winchill, John McCahill have, or claim to have, some interest in, or lien upon, the said mortgaged premises, or some part thereof, which interest or lien, if any, has accrued subsequently to the lien of the said mortgage, and is subordinate thereto."

It is not alleged in the complaint that the children of the testator acquired any interest in the property as devisees under the will of their father, but it is alleged that the mortgage on No. 441 West Forty-fifth street was given as collateral security for the personal bond of Ann McConnell. Under such a complaint the rights acquired by the three infants under the will of their father, which were paramount to this mortgage, were not cut off by the judgment. (*Lewis* v. *Smith*, 9 N. Y. 502; *Frost* v. *Koon*, 30 id. 428; *Rathbone* v. *Hooney*, 58 id. 463; *Emigrant Industrial Savings Bank* v. *Goldman*, 75 id. 127.) It is very clear that the judgment in foreclosure is not on its face a bar to the rights of the infant heirs. It is asserted in behalf of the respondents that the affidavits filed on this motion show that the avails of these two mortgages were applied by the executrix for the benefit of the estate of the testator, and, consequently, for the benefit of the infants. We do not so construe them. No part of the avails of the mortgage on No. 441 West Forty-fifth street was used by the executrix for· the benefit of the estate, but had it been distinctly averred in the affidavits that the avails of this mortgage were applied by her for the benefit of the estate, such averment would not be evidence against the heirs in an action which they may hereafter bring to recover their supposed

interest in the estate. In case an action should be brought by the heirs, the owners of the lot might or might not be able to secure the attendance of the affiants as witnesses, and, in case they should testify, the issue of fact might or might not be found in accordance with their testimony. We do not declare the title derived from Mary Devlin good or bad, for there may be circumstances not disclosed in this record which may estop the heirs from successfully maintaining a claim to the property, but we do hold that the title is so doubtful and uncertain, resting, according to the respondents' theory, upon oral evidence, that the purchaser ought not to be compelled to perform his contract.

The order should be reversed, with ten dollars costs and disbursements, and the motion denied, with ten dollars costs and disbursements.

PARKER, J., concurred.

VAN BRUNT, P. J.:

I concur. The guardian *ad litem* seems to have appeared as attorney for the defendant Ann McConnell, having an interest adverse to the infants, and thus the infants had no protection whatever in the foreclosure action.

Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.